MEADOWS & COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 114.    Decided October 27, 1926.

In the circumstances of this proceeding, *held*, that the value of a stock subscription agreement may not be included in invested capital for the taxable years.

*Walton D. Taylor, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income and excess-profits taxes for the fiscal years ended January 31, 1919, and January 31, 1920, in the amounts of $6,491.96 and $1,319.62, respectively.

The issue is whether the value of certain subscriptions for capital stock in the amount of $38,900 may be included in invested capital.

FINDINGS OF FACT.

The petitioner is a Texas corporation engaged in the wholesale grocery business, with principal office at Waco, Tex. In September, 1917, the stockholders of two Texas corporations engaged in the wholesale grocery business decided to dissolve them and organize the petitioner as a successor corporation. One of the corporations to be dissolved, having a capital stock of $200,000, was engaged in business in Waco, Tex., under the name of Taylor-Hanna-James Co., and the other corporation, the Meadows Grocery Co., was engaged in business in Comanche County, Tex. On September 17, 1917, a contract was executed by the president of the Meadows Grocery Co. and the vice president of the Taylor-Hanna-James

Co., on behalf of the stockholders of the respective corporations, whereby most of the assets of the two corporations were to be transferred to the new corporation which eventually became the petitioner. The new corporation was to issue its stock in payment for certain assets of the Taylor-Hanna-James Co. and assume certain of its obligations. The contract provided that the stockholders of the Taylor-Hanna-James Co. would subscribe for $50,000 of the stock in the new corporation and that the Taylor-Hanna-James Co. would retain and collect all its outstanding accounts and bills receivable and would apply the proceeds thereof, as collected, first, to the payment of any amounts due the creditors of the Taylor-Hanna-James Co., and the balance to the subscription of $50,000 of stock in the new corporation by the stockholders of the Taylor-Hanna-James Co. If, after collecting all accounts and bills receivable, there remained any balance due upon the subscription of $50,-000, then the stockholders of the Taylor-Hanna-James Co. in the new corporation would have fifteen months from the date of the contract within which to pay the balance of said subscription. Shortly after the execution of the contract the stockholders of the Taylor-Hanna-James Co. delivered to the new corporation goods and merchandise of the value of $11,100, leaving $38,900 due to the subscriptions.

On April 8, 1918, C. W. Meadows took over and assumed the obligation of $38,900 of the stockholders of the Taylor-Hanna-James Co. under the subscription contract.

The $50,000 of stock of the new corporation was not issued at the date of execution of the contract on September 17, 1917, nor was it issued until actual payment was made for the stock. No notes were received from the stockholders to secure payment for the stock.

OPINION.

GREEN: The petitioner claims that its invested capital, for the years in question, of $38,900 should be increased by an amount equal to the subscription to its stock by the stockholders of the Taylor-Hanna-James Co., and relies on the decision in *Appeal of Hewitt Rubber Co.*, 1 B. T. A. 424, in support of its contention. The facts in the *Appeal of Hewitt Rubber Co.* were that Hewitt actually delivered his note on April 1, 1918, in the sum of $1,000,000 for $1,000,000 par value of the stock of the company; that on April 1, 1918, the certificate for $1,000,000 par value of stock was issued to Hewitt and registered with the corporation's transfer agent. Hewitt regularly paid interest to the corporation on the note given for the stock, received dividends, and actually paid the note for $1,000,000 during the year 1918.

The facts in this appeal are quite different. No stock was actually issued or delivered until full payment had been made therefor; no notes were received from the stockholders.

We have had occasion to consider a question similar to the one here in issue in *Appeal of Central Consumers Wine & Liquor Co.*, 1 B. T. A. 1190, and we see no reason to depart from the decision rendered in that appeal. See also *Appeal of Forge Coal Mining Co.*, 2 B. T. A. 975.

> *Judgment will be entered for the Commissioner.*